OPINION OF THE COURT
Simons, J.
Defendant appeals from an order of the Appellate Term which affirmed a judgment entered on a guilty plea convicting *358 him of the misdemeanor of sexual abuse in the third degree. The guilty plea was entered after an earlier trial had been terminated without his consent because the jury was unable to reach a verdict. Defendant contends that the trial was unnecessarily aborted and thus his reprosecution violated the Double Jeopardy Clauses of the United States and New York Constitutions (US Const 5th Amend; NY Const, art I, § 6).* We agree and reverse the order of Appellate Term and dismiss the information.
Defendant and a codefendant were charged with assault, third degree, sexual misconduct and sexual abuse, third degree. Their trial commenced March 30, 1984 and continued on April 2 and 3. The jury was charged on the morning of April 4 and, at the conclusion of the instructions, at 11:55 a.m., retired to deliberate. Shortly after retiring, the jury requested a readback of the testimony of the complainant, the codefendant and the arresting officer. The reading was deferred until after lunch and required much of the afternoon. After the readback, the jury continued deliberating for about an hour and then requested the exhibits and a readback of a doctor’s testimony. They recessed for dinner from 6:30 p.m. until 8:00 p.m. and at 9:15 p.m. the jury requested that the testimony of the complainant, codefendant and arresting officers be read back again. The court asked the jurors to specify which portions of the testimony they were interested in and when they had not responded by 10:00 p.m., the Judge summoned them to the courtroom and clarified his earlier instructions. After the jury left the courtroom, the Judge advised counsel, "If they have not reached a verdict by eleven-thirty we’ll have to declare a mistrial, so if they can’t reach a verdict it has to be a mistrial.” The jury was in the courtroom again from 11:40 p.m. to midnight as selected testimony was read back in response to the jury’s earlier request. At the conclusion, the court directed the jurors to return to the jury room and decide *359 whether the court had complied sufficiently with their request and "whether or not you feel that further deliberations will be fruitful in arriving at a verdict”. After the jury left, the court asked defendant’s counsel to consent to a mistrial. He refused.
At 12:25 a.m., the court, sua sponte and over defendant’s objection, returned the jury to the courtroom and declared a mistrial. The entire colloquy between the court and the foreperson before its ruling follows:
"the court: Mr. Foreperson have the Jury reached a verdict on any of the counts as to any of the defendants?
"the foreperson: No, Sir. Still have a lot of discrepancies as far as deciding the verdict. We all having [sic] different opinions.
"the court: And have [sic] there been any movement in the voting in the last couple of hours?
"the foreperson: Yes.
"the court: Do you feel that further deliberations will be fruitful?
"the foreperson: At this point, no, Sir.
"the court: It is the opinion of the jury that you cannot reach a verdict?
"the foreperson: We cannot reach a verdict, Sir.
"the court: All right and that further deliberation will not be fruitful?
"the foreperson: No, Sir, not at this time.”
The court then discharged the jury.
Both the State and Federal Constitutions provide that the State may not put a defendant in jeopardy twice for the same offense (NY Const, art I, § 6; US Const 5th Amend; Benton v Maryland, 395 US 784). These constitutional protections unequivocally prohibit a second trial following an acquittal. If the innocence of the accused has been confirmed by a final judgment, no matter how erroneous that judgment may be, the Constitutions conclusively presume that a second trial would be unfair.
Because jeopardy attaches as soon as a jury has been sworn (CPL 40.30 [1] [b]), our constitutional provisions also embrace the defendant’s right to be free from reprosecution if the first trial has not continued to conclusion. As a general rule, the prosecutor is entitled to one, and only one, opportunity to require the accused to stand trial for a defendant possesses a "valued right” to have his trial completed by a particular *360 tribunal on the first presentation of the evidence (see, Wade v Hunter, 336 US 684, 689; United States v Jorn, 400 US 470, 486; and see, Arizona v Washington, 434 US 497, 503-504; Green v United States, 355 US 184, 187-188). Even if the first trial is not completed, a second prosecution may be grossly unfair because it increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted.
If the merits of the charges against the defendant have not been resolved, however, the "valued right” to have the trial concluded by a particular tribunal may be subordinate to the public interest "in seeing that a criminal prosecution proceed to verdict” (Illinois v Somerville, 410 US 458, 463; Arizona v Washington, supra, at 505). The "classic example” of charges which may be retried when the first trial has been aborted without defendant’s consent arises when the jurors reach an impasse and are unable to arrive at a verdict (Downum v United States, 372 US 734, 735-736; Matter of Owen v Stroebel, 65 NY2d 658; Matter of Plummer v Rothwax, 63 NY2d 243). Retrial is not prohibited in such cases.
The determination of a Trial Judge that deadlock has occurred and that a mistrial is necessary involves the exercise of discretion. The trial court’s judgment is entitled to great deference by reviewing courts for it is best situated to take all the circumstances of the particular proceeding into account and determine whether a mistrial is in fact required (Matter of Plummer v Rothwax, supra, at 250; Hall v Potoker, 49 NY2d 501, 505; see also, People v Ortiz, 54 NY2d 288, 292; Illinois v Somerville, supra, at 462; see also, People v Michael, 48 NY2d 1, 9; Gori v United States, 367 US 364, 368). Nevertheless, Trial Judges are not free to act without restraint. The defendant’s right to obtain a verdict from the first jury selected should not be foreclosed unless it is clear that the jury is hopelessly deadlocked and that there is no reasonable probability it can agree. In the words of Justice Story, the court’s power to declare a mistrial must be exercised with the "greatest caution, under urgent circumstances, and for very plain and obvious causes”; the authority to discharge the jury is limited to those situations where, "taking all the circumstances into consideration, there is a manifest necessity for the act” (United States v Perez, 9 Wheat [22 US] 579, 580).
*361 The record in this case does not demonstrate a manifest necessity for terminating defendant’s trial. The Trial Judge himself first raised the issue when he mentioned the possibility of a mistrial to counsel around 10:00 p.m. and announced to counsel that if the jury had not reached a verdict by 11:30 p.m. a mistrial would be declared. This was after he had satisfied the jury’s request for a readback but before they had even had an opportunity to consider the testimony just read to them. The jury had not given any indication that it was unable to reach a verdict and the court’s statement was apparently made without consulting counsel. When the court did discuss the possibility of deadlock with the jury, it was because the Judge had decided to summon them to the courtroom to discuss the possibility of an impasse, not because the jury had notified him they were in any difficulty,
The impetus for the declaration of mistrial having come solely from the Judge, he was under a particular obligation to demonstrate on the record that the jury believed it was unable to decide the case. His colloquy with the foreperson fell far short of establishing that to be so. Indeed, the foreperson indicated that there had been recent "movement” among the jurors and the logical inference arising from the foreperson’s equivocal statement, repeated twice, that the jury was not able to resolve the matter "at this time” is that the jury was exhausted, not deadlocked. But further than that, because the court acted sua sponte, the jury did not know why it was being returned to the courtroom. Thus, the foreperson’s answers to the court’s questions may well have been his answers alone. All the jurors were present in the courtroom during this colloquy and prudence dictated that under the circumstances the court should have obtained confirmation of the foreperson’s answers from other jurors before deciding the question (see, United States v Horn, 583 F2d 1124, 1128; United States ex rel. Webb v Court of Common Pleas, 516 F2d 1034; United States v See, 505 F2d 845, 851; cf., Matter of Plummer v Rothwax, supra, at 252; Nelson v District Ct., 543 F2d 631, 632; United States v Cawley, 630 F2d 1345 [all cases in which polling was found unnecessary because the jury had initiated the discussions on deadlock]).
There is, of course, no mechanical formula for determining the necessity for a new trial and no minimum time a jury must deliberate before a mistrial is considered. These jurors, however, had little opportunity to decide this case. Although *362 the trial had been relatively short, nine witnesses had been sworn and there were serious discrepancies in their versions of the underlying incident. In an effort to resolve these discrepancies, the jury had requested the court to read back testimony several times and was in the process of considering some of this testimony when the mistrial occurred. There is no support in the record for the court’s determination that the jury had found the problem insoluble or believed itself hopelessly deadlocked and in the absence of such evidence, the trial court abused its discretion in declaring a mistrial, as a matter of law.
Accordingly, the order should be reversed and the information dismissed.
Chief Judge Wachtler and Judges Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

 Before pleading guilty, defendant instituted an article 78 proceeding in Supreme Court seeking to prohibit the District Attorney from reprosecuting him. Supreme Court denied the petition and defendant filed a notice of appeal. After his guilty plea, the District Attorney moved to dismiss the appeal for mootness, conceding that defendant could raise the jeopardy issue on direct appeal. Accordingly, defendant withdrew the appeal before the court ruled on it. Consistent with her concession, the District Attorney does not assert before this court that the issue is barred by the doctrine of res judicata and we, therefore, do not consider it (see, People v Di Raffaele, 55 NY2d 234, 243; People v Abbamonte, 43 NY2d 74, 80; People v Jontef, 97 AD2d 828).