[962 NYS2d 59]

In the Matter of JAMAL MORRIS, Petitioner, v LEONARD LIVOTE et al., Respondents.

First Department, February 21, 2013

44

**APPEARANCES OF COUNSEL**

*The Bronx Defenders*, Bronx (*V. Marika Meis, Adeola Ogunkeyede* and *John Vang* of counsel), for petitioner.

*Eric T. Schneiderman, Attorney General*, New York City (*Susan Anspach* of counsel), for Hon. Leonard Livote, respondent.

*Robert T. Johnson, District Attorney*, Bronx (*Tammy M. Vadasz* and *Breanne M. Smith* of counsel), for Robert T. Johnson, respondent.

**OPINION OF THE COURT**

FREEDMAN, J.

In this CPLR article 78 proceeding, petitioner seeks a writ of prohibition barring respondents from retrying him on criminal charges after his first prosecution ended with the trial court declaring a mistrial* on the People's motion and without petitioner's consent. We grant the application because there was no manifest necessity for a mistrial, and accordingly retrial is barred under the Double Jeopardy Clauses of the Federal and

---

* Justice Edgar Walker granted the mistrial on September 27, 2012. The case was sent back to part H75 in Bronx Supreme Court, Criminal Term which is currently presided over by Justice Livote.

New York State Constitutions (US Const 5th Amend; NY Const, art I, § 6; *see also Matter of Enright v Siedlecki*, 59 NY2d 195, 199-201 [1983]).

In 2010, petitioner was charged with criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in or near school grounds. The case was tried in September 2012. Before jury selection, defense counsel moved in limine for, among other things, permission to cross-examine Detective Leslie Gauvin, the arresting police officer, about a federal civil lawsuit for false arrest that one Jesus Rosario had filed against him in 2007, which had been settled for $25,000. The People then informed the court and the defense that it did not plan to call Detective Gauvin as a witness, and the court determined that the motion in limine was moot.

Defendant's trial commenced on September 24, 2012. The prosecution first called Sergeant Edward Wynn, who supervised the undercover buy and bust operation. The Sergeant testified that he was stationed in a car with Detective Gauvin during the operation and saw an undercover officer interact with petitioner on the street. Thereafter, the officer radioed Sergeant Wynn and Detective Gauvin that he had purchased drugs from petitioner, whereupon the Sergeant and the Detective arrested petitioner. Sergeant Wynn also testified that he saw Detective Gauvin recover prerecorded "buy" money from petitioner's pocket.

After Sergeant Wynn completed his testimony and a New York City Police Department criminalist testified that the substance sold to the undercover officer was cocaine, defense counsel then stated that, if the People did not call Detective Gauvin, counsel would request that the court give a missing witness instruction to the jury. After the court agreed to give the charge, the prosecution indicated that it was reconsidering whether to call Detective Gauvin and asked for a ruling on defendant's motion in limine. The court ruled that the monetary settlement of the civil suit provided a good faith basis for defense counsel to question the Detective about his alleged bad acts and that he was "free to answer yes or no as to whether he did any of the particular things alleged." The court ruled, however, that it would not allow defense counsel to introduce any collateral evidence of the allegations.

The day concluded with the testimony of another participant in the undercover operation who followed the undercover buyer on the street and also observed his interaction with petitioner.

On the next day of trial, the People called Detective Gauvin. On direct examination, the Detective testified that he could not remember anything about the circumstances surrounding petitioner's arrest except that he had assisted in the incident.

On cross-examination, defense counsel asked Detective Gauvin whether it was true that in September 2007 one Jesus Rosario had filed a civil rights lawsuit against him in federal court. Before the witness answered, the People objected and counsel approached the bench. Thereafter, the judge stated on the record that, at the sidebar conference, he had instructed defense counsel that while he could ask Detective Gauvin about the alleged bad acts that gave rise to the lawsuit, counsel could not ask the Detective about the lawsuit itself or the settlement.

After the conference, the court reminded the jury that defense counsel's question did not constitute evidence. Next, defense counsel asked Detective Gauvin whether Rosario had accused him of false arrest and imprisonment. The People objected but the court overruled the objection. The Detective admitted that Rosario had claimed false arrest but denied that he had claimed false imprisonment.

Defense counsel then asked Detective Gauvin, "Is it true in 2007, . . . Jesus Rosario sued you?" The People objected and asked for another curative instruction. The court sustained the objection and again instructed the jury that "[q]uestions are not evidence." Defense counsel next asked the witness whether he had fabricated evidence in connection with Rosario's arrest. After the court overruled the People's objection, Detective Gauvin answered "no." Finally, defense counsel asked, "Is it true that . . . this litigation . . . was settled for $25,000?" The People objected and, after the court sustained the objection, asked to allow counsel to approach.

After an off-the-record discussion, the People requested that the court declare a mistrial because defense counsel had "flagrantly disregarded" the court's ruling about the scope of cross-examination and "tried to taint the jury with respect to [Detective Gauvin]" by asking about the federal lawsuit and the settlement. Defense counsel objected, arguing that there was no "manifest necessity" for a mistrial because the court could remedy any prejudice to the People by less extreme means. Counsel also claimed that any prejudice to the prosecution was minimal because Detective Gauvin was a nonmaterial witness who could not remember anything about petitioner's arrest. Defense counsel suggested that, before declaring a mistrial, the court

could poll the jurors as to whether they could be fair and impartial.

The court granted the People's motion and declared a mistrial. Finding that defense counsel had intentionally ignored its directions, the court stated that the jurors would have to perform "mental gymnastics" to disregard counsel's references to the federal lawsuit and the monetary settlement. The court refused to poll the jurors, stating that "there isn't any remedy short of a mistrial that would cure the blatant, intentional misconduct."

The State is prohibited from prosecuting a defendant twice for the same offense (US Const 5th Amend; NY Const, art I, § 6). When the court declares a mistrial on the prosecution's motion and over the defendant's objection, a retrial is precluded unless "there is a manifest necessity for [the mistrial], or the ends of public justice would otherwise be defeated" (*United States v Perez*, 22 US 579, 580 [1824]; *see also People v Michael*, 48 NY2d 1, 9 [1979]). While deference is accorded to the trial court's decision to declare a mistrial, the court's discretion is not unlimited (*Matter of Enright*, 59 NY2d at 200; *Matter of Zeigler v Morgenthau*, 99 AD2d 989, 991 [1st Dept 1984, Alexander, J., dissenting], *revd on dissent* 64 NY2d 932 [1985]). The trial court must "properly explore[ ] the appropriate alternatives" and there must be "a sufficient basis in the record for a mistrial" (*Hall v Potoker*, 49 NY2d 501, 505 [1980]).

Where, as happened here, the People move for a mistrial because of defense counsel's improper questioning of a witness or statements before the jury, such misconduct does not manifestly necessitate a mistrial unless counsel's misconduct was egregious and substantially and irreparably prejudiced the People's case (*see Matter of Rubenfeld v Appelman*, 230 AD2d 911, 912 [2d Dept 1996] [where defense counsel disregarded the court's instructions during summation, interrupted the court, and displayed "(an) argumentative manner" and "overzealous advocacy," court abused its discretion by declaring mistrial and People failed to meet "their burden of demonstrating that . . . a mistrial was manifestly necessary"]; *see also* CPL 280.10 [2]).

Although defense counsel's disregard of the court's instructions was blameworthy and understandably angered the court, the cross-examination did not rise to the level of the gross misconduct displayed in cases in which retrial was permitted (*see People v Hernandez*, 46 AD3d 1388 [4th Dept 2007], *lv denied* 10 NY3d 811 [2008]; *Matter of Maynard v Wait*, 246

AD2d 853 [3d Dept 1998]). Further, counsel's impropriety did not significantly prejudice the People because Detective Gauvin's testimony was not material. He testified that he did not remember anything about the circumstances leading to petitioner's arrest after three other witnesses had identified petitioner as a drug dealer and described his alleged involvement in the drug transaction with the undercover officer. Finally, more specific curative instructions or a poll of the jurors to ascertain whether they could render an impartial verdict would have been appropriate here (*see Matter of Rubenfeld*, 230 AD2d at 912).

Accordingly, the petition for a writ of prohibition should be granted, without costs, respondents prohibited from reprosecuting petitioner for any crimes arising out of the acts underlying Bronx County indictment No. 4334/10, and the indictment dismissed.

SAXE, J.P., MANZANET-DANIELS and GISCHE, JJ., concur.

Application for a writ of prohibition granted, without costs and disbursements, respondents prohibited from prosecuting petitioner for any crimes arising out of the acts underlying Bronx County indictment No. 4334/10, and the indictment dismissed.